IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS PATRICK,<br><br>                    Petitioner,<br><br>vs.<br><br>RANDY GROUNDS, Warden, Salinas Valley State Prison,[1]<br><br>                    Respondent. | No. 2:11-cv-1195-JKS<br><br>MEMORANDUM DECISION |

Nicholas Patrick, a state prisoner represented by counsel, timely filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Patrick  is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Salinas Valley State Prison.  Respondent has answered, and Patrick has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

On January 3, 2006, Patrick and his co-defendant, Jose Anthony Sterling, were charged by information with the murder of James Fullard, Jr., and Doretha Moore and robbery of Fullard. The information also charged multiple murder and robbery special circumstances and alleged that, during the commission of each offense, each defendant personally used a firearm and discharged a firearm resulting in death.

On direct appeal, the California Court of Appeals summarized the facts underlying Patrick's indictment as follows:

> In the afternoon on September 11, 2005, [Patrick] and Sterling met near Sterling's residence.  They decided to obtain some marijuana.  [Patrick] was a seller of marijuana,

---

[1]        Randy Grounds is substituted for Alfonso Fillon as warden of Salinas Valley State Prison.  FED. R. CIV. P. 25(c).

and Fullard was his supplier.  [Patrick] used a cell phone to call Fullard from Sterling's residence, and Fullard agreed to come to Sterling's residence.  About 20 or 30 minutes later, [Patrick] and Sterling received a call that Fullard and Moore were outside in a car. [Patrick] and Sterling went outside and got into the backseat of the car.  Moore was driving, and Fullard was in the front passenger seat.  [Patrick] was seated behind Fullard, and Sterling was seated behind Moore.

Moore drove the car down the street, while Fullard and [Patrick] talked about the marijuana.  Moore made a U-turn, as Fullard gave [Patrick] two or three ounces of marijuana.  It was much more marijuana than Sterling thought they were buying.  Fullard asked for the money, and [Patrick] acted as if he was reaching into his pocket for money. Instead, he pulled out a gun and shot Fullard twice in the head.  Moore began screaming, and [Patrick] shot her three times.  Both Fullard and Moore were killed by the gunshots.

The car crashed into six other cars. When it came to a stop, [Patrick] and Sterling ran from the scene.  A witness recounted that one of them yelled, "Cover your face, cover your face."  Both covered their faces with their shirts, and Sterling held the waistband of his baggy shorts.

[Patrick] and Sterling went to Sterling's residence.  Sterling washed his face and hands.  [Patrick] and Sterling changed out of their clothes, which were stained with blood.  [Patrick] borrowed some of Sterling's clothing and left.  Before he left, [Patrick] tried to get Sterling to leave the residence with him, but Sterling stayed.

On the same day as the shootings, Stockton Police Department detectives went to Sterling's residence and questioned him.  While there, they saw the bloody clothing. They collected the clothing, and later analysis showed Fullard's blood on [Patrick's] shorts and shirt, as well as on Sterling's shirt.  Moore's blood was on Sterling's shorts and shoes.

Sterling was arrested and taken to the police station.  The next morning, [Patrick] was arrested and also taken to the police station.

A search was conducted at [Patrick's] residence.  No guns were found.  However, in the backyard was a shoebox containing about two ounces of marijuana–the marijuana that [Patrick] took from Fullard.

After [Patrick] and Sterling were interviewed separately, they were put together in a room where their conversation could be recorded.  Sterling started the conversation by stating that the detectives thought that he and [Patrick] were involved in a shooting other than of Fullard and Moore.  [Patrick] then told Sterling that the detectives had let him listen to the tape of Sterling's interview, and [Patrick] accused Sterling of lying that [Patrick] was present when Fullard and Moore were shot.

[Patrick] told Sterling that all he had to say to the detectives was that [Patrick] was not there and that he was not the shooter.  [Patrick] rehearsed with Sterling what Sterling would tell the detectives: that Sterling called [Patrick] for some marijuana, they got into the car along with a person named "CJ" (a made-up name), and "CJ" shot Fullard and Moore.

Broderick Huggins was in jail at the same time as [Patrick] and Sterling.  At separate times he was housed with each of them.  Sterling told Huggins that he and [Patrick] planned to rob Fullard, but Sterling did not know that [Patrick] intended to

2

shoot Fullard and Moore.  [Patrick] offered to pay Huggins to discredit Sterling.
[Patrick] wrote scripts for Huggins to use in talking to authorities.  [Patrick] admitted to
Huggins that he and Sterling set up Fullard to rob him of the marijuana and that he shot
Fullard and Moore because he was afraid Fullard would retaliate for the robbery and that
Moore would be a witness against him.  [Patrick] tried to get Sterling to go with him after
they returned to Sterling's residence after the shootings so that [Patrick] could kill
Sterling.  [Patrick] also asked another inmate, Ashton Bennett, to lie to authorities on his
behalf.

       Expert testimony established that Fullard and Moore were shot from inside the
car.  The shots came from between the victims, the gun being somewhere in the middle·of
the backseat.  All of the shots came from the same gun.

       In the defense case, there was testimony that Fullard had been arrested 10 years
earlier in connection with a shooting for which other people went to prison.  (The name
"Rocquemore" was associated with that crime.)  Fullard did not go to prison, and there
was speculation that he had avoided prison by cooperating with the authorities.

       [Patrick] testified that Fullard was a family friend.  On the day of the shooting,
[Patrick] called Fullard on behalf of Sterling, who wanted to buy marijuana.  When
Fullard and Moore arrived, [Patrick] and Sterling got into the backseat.  Sterling pulled a
gun from his waistband and said, "This is for snitching on Rocquemore."  He then shot
Fullard and Moore.

Patrick and Sterling were tried in the same proceeding but by separate juries.  Sterling's
jury acquitted him of all charges.  Patrick's jury found him guilty on all counts and found all the
allegations to be true.  The trial court sentenced Patrick to a determinate term of three years for
the robbery, with an additional indeterminate term of 25 years to life for discharge of a firearm
resulting in death.  For each of the two murders, the court sentenced Patrick to an indeterminate
term of life without possibility of parole, plus 25 years to life for discharge of a firearm resulting
in death.  All of the terms were to run consecutively.

Through counsel, Patrick appealed his conviction, arguing that: 1) his trial counsel was
ineffective for failing to object to the admission of Huggins's statements as hearsay; 2) the trial
court erred in admitting his police-initiated conversation with Sterling; 3) the trial court erred in
allowing the prosecution and Sterling to pose questions that invaded Patrick's attorney-client
privilege; 4) he was subject to ineffective assistance of counsel when the trial court found that

3

defense counsel's continued representation of Patrick did not constitute a conflict; 5) the trial court abused its discretion when it instructed the jury that it could consider Patrick's refusal to continue with cross-examination when evaluating his credibility; 6) the trial court erroneously admitted into evidence items found in Patrick's blood-stained shorts; 7) the prosecutor committed misconduct; 8) his consecutive sentence violated California Penal Code § 654; and 9) the existence of cumulative error required reversal of his conviction.

The California Court of Appeal affirmed his conviction in an unpublished, reasoned decision.  First, the appellate court rejected his contention that trial counsel was ineffective for failing to object to the admission of Huggins's statement after finding that the statement was admissible as a statement against penal interest.  The appellate court likewise determined that the admission of Patrick's conversation with Sterling was proper "because the taint of the involuntary confession had been purged by intervening circumstances."  Third, the court found that Patrick voluntarily waived his attorney-client privilege when he volunteered during cross-examination that he had told his attorney about the evidence.  The court also found that Patrick's defense counsel had no actual conflict of interest because there was no reason for his defense counsel to testify in the case and that the trial court properly sanctioned Patrick for refusing to continue cross-examination by giving the jury the credibility instruction.  The court likewise concluded that the trial court properly admitted evidence found in Patrick's shorts after finding no break in the chain of custody.  As to Patrick's claim that the prosecutor committed misconduct, the court found Patrick's claim without merit because the theories the prosecutor presented to the juries were not inconsistent, her approach was justified, and there was no resulting injustice.  The court likewise rejected his multiple punishment in sentencing claim,

4

finding that the evidence supported consecutive sentencing and, finally, found no cumulative

error because it found no error in the trial proceedings.  Patrick petitioned for review of the

denial to the state supreme court, which was denied without comment on July 22, 2009.

On April 13, 2010, Patrick filed a *pro se* petition for a writ of habeas corpus with the

state superior court, asserting that his appellate counsel was ineffective for failing to "raise a

claim of lack of evidence as it relates to the two special circumstances."  The court denied the

petition in an unpublished, reasoned opinion, concluding that Patrick "failed to meet his burden

of proof that he was prejudiced by counsel's decision not to file an appeal of the two special

circumstance allegations based upon a claim of insufficient evidence."  Patrick raised the same

claim in a *pro se* petition for writ of habeas corpus with the state appellate court, which was

summarily denied on July 22, 2010.  Patrick then raised that claim, along with claims that his

trial counsel was ineffective for failing to object to the admission of evidence found in his shorts

and failing to "investigate or research[] the law applicable to [his case]," in a *pro se* habeas

petition to the state supreme court.  The state supreme court denied the petition without comment

on March 30, 2011.

## II. GROUNDS/CLAIMS

In his Petition before this Court, Patrick raises thirteen claims, including allegations that:

1) trial counsel was ineffective for failing to object to inadmissible hearsay evidence; 2) the trial

court erroneously admitted his taped conversation with Sterling; 3) the trial court erroneously

determined that Patrick waived his attorney-client privilege; 4) he was denied effective

assistance of counsel when the trial court determined that his counsel's continued representation

did not present a conflict of interest; 5) the trial court denied Patrick due process when it

instructed the jury that it could consider Patrick's refusal to continue cross-examination in assessing his credibility; 6) trial counsel was ineffective for failing to investigate evidence discovered in Patrick's shorts and failing to make a continuous objection to the discovery; 7) the trial court erroneously admitted the items found in the shorts; 8) the prosecutor committed reversible misconduct; 9) trial counsel was ineffective for failing to investigate his case and adequate research case law; 10) appellate counsel was ineffective for failing to investigate the facts of his case "as a whole"; 11) the trial court erred in imposing a consecutive sentence; 12) trial counsel was ineffective for failing to move to dismiss the robbery charge; and 13) the cumulative errors of claims 1-12 denied Patrick his right to a fair trial.

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon

6

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

# IV. DISCUSSION

A.    Exhaustion

On August 30, 2011, Respondent moved to dismiss Patrick's Petition on the ground that it contained unexhausted claims.  Docket No. 13.  Respondent alleged that Patrick did not raise to the California Supreme Court the allegation that he received ineffective assistance of counsel when his trial counsel failed to move for dismissal of the robbery charge when the evidence only showed the crime of theft (claim 12).  *Id.* at 4.  Respondent further claimed that Patrick's cumulative error claim (claim 13) was unexhausted to the extent it encompassed claim 12.  *Id.* Patrick moved to both stay the petition and proceed only with the exhausted claims.  Docket No. 18.  This Court ordered Patrick to submit a written statement indicating whether he wished to stay and abey the Petition in its entirety to allow him to exhaust his currently-unexhausted claims in state court or to proceed in federal court by forfeiting those claims.  Docket No. 19.  Patrick responded that he wished to proceed in federal court and forfeit his unexhausted claims.  Docket No. 20.  On January 23, 2012, this Court ordered that the action would proceed on the merits, "with the exception that [the Petition] shall not include Claim 12, or Claim 13 to the extent that it includes Claim 12."  Docket No. 21.  Because claim 12 has been voluntarily dismissed, this Court will not further address that claim and will not address claim 13 to the extent that it includes claim 12.

B.    Merits

1.    *Ineffective Assistance of Counsel* (claims 1, 4, 6, 9, 10)

Patrick first contends that both his trial counsel and appellate counsel rendered ineffective assistance.

A.     *Strickland Standard on Habeas Review*

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Patrick must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d) standard.  *See Knowles*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

     B.     *Claims 1, 4, 6, 9.  Ineffective assistance of trial counsel*

         a.     *Failure to object to Huggins's testimony*

Patrick first claims that his trial counsel was ineffective for not objecting when Huggins testified that Sterling told him that he and Patrick planned to rob the victim.  According to Patrick, Huggins's testimony was inadmissible hearsay because Sterling's statement did not qualify as a declaration against penal interest under California Code of Evidence § 1230.  Patrick raised this claim on direct appeal, which the appellate court rejected after finding that the statement was admissible as a statement against penal interest.  The court reasoned:

> As a codefendant in the case, Sterling was unavailable to the prosecution as a witness during the prosecution's case-in-chief, even though Sterling later testified during the defense portion of the case.  A criminal defendant has a privilege not to testify. (Evid. Code, § 930.)  "'[U]navailable as a witness' means that the declarant is . . . [e]xempted or precluded on the ground of privilege from testifying concerning the matter to which his or her statement is relevant."  (Evid. Code, § 240, subd. (a) (1).)  Until a defendant waives this privilege, he is unavailable.
>
> [Patrick's] claim that the evidence was too unreliable to be admissible is also without merit.  Because the trial court did not have the opportunity to exercise its discretion to determine whether to admit Sterling's statement to Huggins, we must determine only whether admitting the evidence was within the realm of the trial court's appropriate discretion.  We conclude that it was.
>
> . . . .
>
> Here, there are indications of both reliability and unreliability in Sterling's statement to Huggins.  He may have been attempting to deflect blame, and his statement was partially exculpatory (saying he did not know that [Patrick] would shoot Fullard and Moore).  However, the statements were not made to authorities.  Instead, they.were made to a fellow inmate in a noncoercive situation.

       Because [Patrick] claims that Sterling's statement should not have been available to establish the corpus of the robbery, the only part of the statement relevant to our inquiry is Sterling's statement that he thought that he and [Patrick] were going to rob Fullard.  This statement directly incriminated Sterling; therefore, it is more reliable than his associated statement that he did not know that [Patrick] was going to shoot Fullard and Moore.  While we recognize that the statement about the robbery was part of the broader statement, it was not so suspect as to be inadmissible as a declaration against penal interest.

       The trial court would have been well within the scope of its discretion in admitting the statement if it had been presented with the question by proper objection. Therefore, [Patrick] has not established that counsel was deficient.

Patrick cannot prevail on this ineffective assistance claim.  First, he cannot make the requisite showing of deficient performance.  The record here indicates that Patrick's counsel attempted to discredit Huggins's testimony on cross-examination by eliciting testimony that there was no corroborating evidence to support Huggins's assertions.  Counsel's determination to waive any argument that the statements were inadmissible to instead focus on the stronger argument that they were not supported by corroborating evidence was a reasonable strategic decision that this Court may not second-guess.  *See Strickland*, 466 U.S. at 690-91; *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (on direct appeal rejecting defendant's claim that counsel was ineffective for failing to argue that statements were not against declarant's penal interest).

Moreover, even if he could prove that his trial counsel was deficient, he cannot show that he was prejudiced by counsel's deficient performance.  On direct appeal, the California Court of Appeal determined that counsel was not ineffective because the statement was admissible under California Code of Evidence § 1230 as a hearsay exception for a declaration against penal interest.  When a habeas petitioner argues that his trial counsel rendered ineffective assistance by failing to object to certain evidence as inadmissible under the state's evidentiary rules, the state

11

court's determination that the evidence at issue would have been properly admitted at trial under state law establishes that counsel's failure to object was neither deficient performance nor prejudicial for purposes of the Sixth Amendment. *See Hebner v. McGrath*, 543 F.3d 1133, 1137 (9th Cir. 2008) (rejecting claim that counsel was ineffective for failing to object to rape victim's testimony where state appellate court ruled that the evidence would have been admitted under a different California evidence rule). Furthermore, Patrick does not assert that the admission of Huggins's testimony violated his confrontation rights. Even if he had, Patrick does not allege facts that would raise a Confrontation Clause issue under federal law. *See United States v. Farhane*, 634 F.3d 127, 162 (2d Cir. 2011) ("[A] declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of *Crawford* [*v. Washington*, 541 U.S. 36 (2004)]." (quoting *United States v. Saget*, 377 F.3d 223, 229 (2d Cir. 2004)). Patrick is therefore not entitled to relief on this claim.

        b.    *Conflict of interest*

Patrick next argues that he was deprived effective assistance of counsel when the trial court determined that his counsel's continued representation did not present a conflict of interest.

During trial, Patrick testified that Sterling pulled a gun from his waistband and said, "This is for snitching on Rocquemore," before shooting Fullard. According to Patrick, he informed his trial counsel about the statement, and, after investigation, counsel found that Fullard and Rocquemore were "in a case together or something." During cross-examination, the prosecution suggested that Patrick fabricated the "Rocquemore events" and asked whether Patrick knew that his trial counsel had previously represented Rocquemore; Patrick replied that he did not. Patrick testified that he talked only to his counsel about the Rocquemore events.

12

Trial counsel informed the court after this testimony that it might be necessary for the court to declare a conflict between counsel and Patrick and relieve counsel because the prosecutor and Sterling's attorney wanted to impeach Patrick by arguing that the name Rocquemore came from counsel rather than from Patrick's observations of the crime.  After appointing conflict counsel for Patrick, Patrick decided not to waive any conflict, and the court found no conflict between Patrick and his trial counsel based on counsel's prior representation of Rocquemore.

On direct appeal, Patrick challenged the trial court's failure to relieve counsel, arguing that it placed counsel in the position of either violating the rules of professional conduct and testifying or leaving the jury with the impression that Patrick had fabricated the Rocquemore events.  The appellate court rejected Patrick's contention, finding that the evidence that Patrick and his counsel colluded to have Patrick lie about Rocquemore was "insubstantial."  It determined:

> There was no actual conflict.  While [Patrick's] attorney asserted that the evidence had already planted in the juror's minds the possibility that [Patrick and counsel] arranged for [Patrick] to lie about Rocquemore, in fact, the evidence does not support that assertion. [Patrick] testified that he told [previous counsel] before he told [trial counsel] about Rocquemore.  And McGuire, the investigator, testified that [Patrick] had mentioned Rocquemore.  The prosecutor's question to [Patrick] about whether he knew that Schick had represented Rocquemore was just that–a question.  [Patrick] replied in the negative.  The trial court instructed the jury not to consider questions as evidence.  Accordingly, there was no reason for Schick to testify and there was no conflict between [Patrick and trial counsel].

"In order to prevail on an ineffective assistance of counsel claim based on [a] conflict of interest, a defendant must show that 'an actual conflict of interest adversely affected his lawyer's performance.'"  *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir. 1992) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).  Although a petitioner who "shows that a conflict of

interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief," *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (emphasis omitted), as the state appellate court recognized, Patrick has not demonstrated that there was an actual, rather than potential, conflict of interest. An actual conflict may exist in a case of successive representation if the two cases are substantially related or if the attorney may be required to reveal any privileged communication or otherwise divide his loyalty. *Maiden v. Bunnell*, 35 F.3d 477, 480 (9th Cir. 1994); *Mannhalt v. Reed*, 847 F.2d 576, 583 (9th Cir. 1988). Patrick does not allege that either circumstance is present here.

Even assuming that Patrick were able to establish an actual conflict, he must still demonstrate that the conflict adversely affected counsel's performance. However, the state appellate court ultimately determined that there was evidence in the record to rebut any "insubstantial" inference that Patrick and his counsel colluded about the Rocquemore events such that it was unnecessary for counsel to testify. In light of the evidence in the record, the court's determination that any potential conflict of interest did not result in adverse performance is both reasonable and not contrary to federal law. *See* 28 U.S.C. § 2254(d)(1). Accordingly, Patrick is not entitled to relief on his conflict of interest claim.

        c.     *Failure to object to lack of discovery of items in his shorts*

Patrick additionally argues that trial counsel was ineffective for "fail[ing] to make [a] continuous objection as lack of discovery and . . . fail[ing] to investigate newly discovered evidence during trial." Patrick raised this claim in his habeas petition to the state supreme court, which was summarily denied.

14

On direct appeal, the Court of Appeal described the facts underlying this claim as

follows:

> On September 12, 2005, the day after the shootings, the Stockton Police
> Department searched Sterling's residence.  During the search, a pair of red and black
> shorts was found.  As was everything else found in the search, the shorts were put into a
> separate plastic bag and taken to the police department, where the bag was sealed.
> Detective Jim Ridenour, who collected the items found during the search, signed the
> sealed bag containing the shorts.
> Elizabeth Schreiber, a criminalist, obtained the red and black shorts in the bag
> sealed by Detective Ridenour.  She tested the shorts for the presence of human blood.
> She found human blood on the shorts.  At the same time, in a pocket of the shorts,
> Schreiber found a lighter, a blue washcloth, keys, and five one-dollar bills.  The contents
> in the pocket were not itemized by the detectives who conducted the search of Sterling's
> residence, even though it is standard practice to book each item separately.  Detective
> Eduardo Rodriguez, who was the lead investigator during the search of Sterling's
> residence, testified that, except for the failure to book the items found in the pocket
> separately, the shorts were collected and retained according to proper procedure and the
> items were in the pocket when the shorts were found during the search.
> . . .
> [Patrick] objected to the admission of the shorts and the items found in the pocket.
> Referring to both the shorts and the items from the pocket, defense counsel stated that
> "there's no proper chain of custody established as to show that that item has gone from
> one hand to another, and on the basis of that, that evidence should not be admitted before
> the Court."  The trial court overruled the objection, finding that there had been a proper
> foundation laid for the chain of custody.

In his Petition before this Court:

> [Patrick] asserts that he received ineffective assistance of counsel when his trial
> attorney failed to investigate the newly discovered evidence at the time his trial attorney
> became aware of the new evidence [b]ecause the evidence was damaging and adverse to
> [Patrick's] defense and it withdrew from [Patrick] a crucial and potential meritorious
> defense on all levels.  Furthermore, [Patrick] asserts that by trial attorney failing to make
> a continuous objection on proper grounds of discovery he was denied the effective
> assistance of trial counsel.  [Patrick] asserts that his trial counsel should have made a
> motion for mistrial on discovery grounds and lack of preparation.  [Patrick's] trial
> attorney had no time to neither [sic] prepare nor investigate the facts surrounding the new
> evidence to prepare a crucial and meritorious defense on [Patrick's] behalf.  [Patrick]
> contends that by his trial attorney['s] failure to work diligently and actively on the facts
> stated above he was denied effectiveness of counsel.

While Patrick contends that his trial counsel "should have made a motion for mistrial on discovery grounds and lack of preparation," the record shows that his counsel made an oral motion for mistrial "for failure to discover," stating that the items found in the shorts came as "totally new information."  In response to counsel's motion, the prosecutor stated that she and defense counsel had found the items two weeks earlier when they opened the package containing the shorts.  Because defense counsel had been aware of the items, the court noted that his objection could not be "a request for mistrial based on a failure to provide discovery," and counsel changed its mistrial theory to a "failure to prove through the chain of custody."

It therefore appears that the thrust of Patrick's claim is that trial counsel was deficient for failing to investigate the items when he first discovered them two weeks prior to their admission. However, Patrick fails to identify what his counsel could have discovered had he conducted a more thorough investigation of the evidence at issue.  The Ninth Circuit has routinely rejected ineffective assistance of counsel claims based on a failure to investigate where the petitioner has not identified the specific exculpatory evidence that should have been presented.  *See, e.g.*, *Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th Cir. 1996) (petitioner failed "to explain how an investigation of aggravation evidence would have negated the evidence of the multiple gunshot wounds"); *Hendricks v. Calderson*, 70 F.3d 1032, 1042 (9th Cir. 1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [petitioner] cannot meet the prejudice prong of the *Strickland* test.").

Patrick further requests that, "if the court finds [his] trial attorney effective, please consider the ambush tactics according to the newly discovered evidence in the way it was presented to [Patrick's] trial attorney and the abuse of discretion of the trial court['s] denial of

[his] motion [for] mistrial failure to provide discovery and chain of custody." This Court, having considered the method in which the evidence was introduced, as further discussed with regard to claim 7, *infra*, cannot find that Patrick is entitled to habeas relief due to the admission of the items found in his shorts or based on his counsel's performance with respect to that issue.

        d.    *Failure to investigate applicable law*

Patrick also contends that trial counsel was ineffective for failing to investigate his case and research applicable case law. Patrick raised this claim in his habeas petition to the state supreme court. He argued:

> The prosecutor charged [Patrick] and codefendant Sterling both with a personal discharge of a firearm. [D]uring preliminary hearing there w[as] testimony from expert Parvis Pakdaman that either defendant could have been the shooter but his testimony was based on assumptions. Also there w[as] testimony during [trial] that either defendant could have been the shooter but there w[as] no expert testimony that could make a determination who the shooter was. [Patrick] assert[s] that he received ineffective assistance of counsel when he failed to investigate and research[] the law applicable to him. [Patrick] assert[s] that he was denied the 6th Amendment and his due process of law.

The state supreme court summarily denied the claim. In this appeal, he expands upon his claim:

> [Patrick] asserts that his trial attorney should have investigated the facts of his case and researched case law which supported a pre[-]trial motion to dismiss for lack of evidence as far as personal discharge of a firearm allegation. Since two defendants could not be culpable of an act that only one defendant could be responsible for.
>
> [Patrick] asserts that if trial counsel made a pre[-]trial motion to dismiss for lack of evidence as to the personal discharge of firearm allegation, it is more th[a]n likely that [Patrick] would have received a more favorable outcome for 1) the prosecution would have had to get her story straight as to which defendant to charge with discharging a firearm. It is also likely that Petitioner would have been exonerated of the gun allegation due to the prosecution[']s view expressed during closing argument that "the evidence prove that Sterling was the shooter" . . . and 2) the Jury would have been afforded the opportunity to consider a lesser crime for [Patrick] or if any crime.

As Respondent notes, Patrick failed to raise before the state courts his argument that trial counsel should have filed a pre-trial motion to dismiss based on the personal discharge of firearm allegation.  This Court may not consider claims that have not been fairly presented to the state courts.  28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  To have properly exhausted his state court remedies, Patrick must have presented both the legal arguments and the factual basis to the highest state court.  *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003).  Although he addressed this ground in his Traverse, Traverse at Claim 9, Patrick does not argue that this claim was properly exhausted.  Unexhausted claims must be dismissed.  *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005).

In any event, Patrick's conclusory allegation does not assert a basis for granting habeas relief.  First, as discussed more fully below with respect to claim 12, *infra*, the state appellate court determined that the prosecutor did not present inconsistent theories with respect to the charging of both defendants with a personal use of a firearm allegation.  Second, Patrick cites no authority to support his implication that the trial court has the power to entertain a motion–made in the pretrial stages of a criminal proceeding–to dismiss the charges based on insufficient evidence.  In any event, at the close of evidence at trial, the trial court denied defense counsel's motion for a new trial based on the same facts that would have underlay such pre-trial motion.  Accordingly, Patrick is not entitled to relief on this claim.

C.     *Claim 10.  Ineffective assistance of appellate counsel*

Patrick claims that he likewise received ineffective assistance of counsel when appellate counsel "failed to investigate the facts of [Patrick's] case as a whole."  In support of this claim, Patrick complains that appellate counsel "did not raise a claim [of] lack of evidence as to the personal discharging of a firearm . . . [b]ecause, on record there was evidence in equipoise as to which defendant was the shooter."  Citing *Strickland* and state case law, the state superior court denied the claim, stating that "[Patrick] has failed to meet his burden of proof that he was prejudiced by counsel's decision not to file an appeal of the two special circumstance allegations based upon a claim of insufficient evidence.  The Petition therefore does not include any factual allegations sufficient to make a prima facie showing to support [Patrick's] allegations."

Analysis of an ineffective assistance of appellate counsel claim starts with the rule that the failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.  *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1434-35 (9th Cir. 1989) (appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).  Thus, in order to assess whether appellate counsel rendered constitutionally adequate representation, this Court must determine whether Patrick's claim that there was insufficient evidence to show that Patrick discharged a firearm was either meritless or weak under the standards California appellate courts use to evaluate insufficient evidence claims.

19

"On appeal, an appellate court deciding whether sufficient evidence supports a verdict must determine whether the record contains substantial evidence–which we repeatedly have described as evidence that is reasonable, credible, and of solid value–from which a reasonable jury could find the accused guilty beyond a reasonable doubt." *People v. Hovarter*, 189 P.3d 300, 312 (Cal. 2008) (citations and emphasis omitted).  As a California appellate court explained:

> In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  We resolve all conflicts in the evidence and questions of credibility in favor of the verdict, and indulge every reasonable inference the jury could draw from the evidence.  This standard applies whether direct or circumstantial evidence is involved . . . .  Reversal is unwarranted unless upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].

*People v. Mendez*, 114 Cal. Rptr. 3d 870, 877 (Cal. Ct. App. 2010) (citations and internal quotation marks omitted).

A review of the record dictates that Patrick cannot meet the heavy burden imposed by California courts upon a defendant challenging on direct appeal the sufficiency of the evidence underlying his conviction.  In Patrick's case, the evidence supporting the jury's finding that he discharged a firearm was substantial.  First, Sterling testified that Patrick shot the victims, which the jury apparently found credible.  *See Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (noting that a "jury's credibility determinations are . . . entitled to near-total deference").  Two other inmates also testified that Sterling told him that Patrick shot the victim and that Patrick offered to pay them to say that Sterling admitted to being the shooter, and wrote out a script of what they should say.  The record does not compel the conclusion that no rational trier of fact could have found proof that Patrick was the shooter and Patrick therefore cannot prove that he

would have prevailed on his claim on appeal.  Consequently, Patrick cannot show that appellate

counsel was ineffective for failing to raise it, and he is not entitled to relief on this ground.

2.      *Evidentiary Error* (claims 2, 3, 7)

Patrick also asserts that the trial court made three evidentiary errors that warrant habeas

relief.

A.      *Claim 2.  Conversation with Sterling*

Patrick first claims that the trial court erred in admitting his taped conversation with

Sterling, contending that "[b]ecause [Patrick's] police[-]initiated conversations with codefendant

Sterling w[ere] tainted by [Patrick's] earlier coerced statements to the police, the erroneous

admission of the conversation violated his Fourteenth Amendment right to due process and his

Fifth Amendment right to remain silent."  The appellate court rejected this claim on Patrick's

direct appeal of his conviction:

> We agree with the trial court that, even though the police purposefully put
> [Patrick] and Sterling together to see if [Patrick] would make incriminating statements,
> the statements made by [Patrick] under those circumstances were not tainted by
> [Patrick's] earlier involuntary confession.  [Patrick] and Sterling did not know that they
> were being monitored and recorded and therefore could not have been simply attempting
> to appease the police.  During [Patrick's] conversation with Sterling, the police conduct
> that rendered [Patrick's] confession involuntary (promise of leniency and threat to
> prosecute relatives) appeared to have no bearing on [Patrick's] statements.  [Patrick] was
> interested, simply and foremost, in getting Sterling to lie to the police about [Patrick's]
> involvement.  Thus, the intervening circumstance of placing [Patrick] in a room where he
> conversed with Sterling, free of any perceived police coercion, purged the taint of the
> police conduct which led to the involuntariness of the prior confession.  Because the
> prosecutor successfully showed this break in the causal connection between [Patrick's]
> involuntary confession and the subsequent conversation with Sterling, the trial court
> properly denied the motion to exclude the statements that [Patrick] made during the
> conversation.

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional

restraints on ordinary evidentiary rulings by state trial courts."  *Crane v. Kentucky*, 476 U.S. 683,

689 (1986).  The Supreme Court has further made clear that federal habeas power does not allow

granting relief on the basis of a belief that the state trial court incorrectly interpreted the state

evidence code in ruling on the admissibility of evidence.  *Estelle*, 502 U.S. at 72 (citing *Cupp v.*

*Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643 (1974)).

 The erroneous admission of evidence does not provide a basis for federal habeas relief

unless it rendered the trial fundamentally unfair in violation of due process.  *Holley v.*

*Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Evidence violates due process only if "there

are no permissible inferences the jury may draw from the evidence."  *Jammal v. Van de Kamp*,

926 F.2d 918, 920 (9th Cir. 1991) (emphasis omitted).  A writ of habeas corpus will be granted

for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable

and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and

take due account of its shortcomings.'"  *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002)

(quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)).

 Under these standards, the state court's rejection of Patrick's claim does not support

habeas relief because the admission of the taped conversation did not violate any clearly

established federal law.  *See Holley*, 568 F.3d at 1101.  It was not objectively unreasonable for

the court of appeal to conclude that Patrick's statements had not been tainted or were otherwise

involuntary.  The record supports each of the factual predicates relied upon by the court in

making that determination, and Patrick has failed to establish that this evidentiary ruling

rendered his trial fundamentally unfair.  *See Foster v. Jones*, No. 97-17415, 2000 WL 1836731,

at *1 (9th Cir. Dec. 13, 2000) (admission of taped conversations into evidence did not violate

due process because, "[i]n light of witnesses' testimony implicating [petitioner] in the conspiracies to manufacture methamphetamine and commit murder, admission of the challenged tape recorded conversations did not have a 'substantial and injurious effect or influence in determining the jury's verdict'" (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Patrick is not entitled to relief on this ground.

      B.    *Claim 3. Attorney-client privilege determination*

Patrick additionally argues that the trial court abused its discretion and violated his due process when it erroneously allowed the prosecution and Sterling's counsel to invade Patrick's attorney-client privilege by sustaining counsel's objections to questioning on the Rocquemore events. As previously discussed, to rebut the prosecution's implication that he had fabricated the Rocquemore events, Patrick testified on cross-examination that he had told his counsel about those events. During questioning on those events, defense counsel attempted to make a continuing objection that the questioning violated Patrick's attorney-client privilege. Counsel later moved for a mistrial based on the alleged violation, which the court denied.

On direct appeal of his conviction, Patrick argued that he did not waive the attorney-client privilege because the waiver was not unambiguous and his statement did not disclose a significant part of the communication. The appellate court disagreed, finding that he unambiguously waived the privilege because "[t]he question posed by the prosecutor was whether [he] had recently fabricated his testimony. The prosecutor said nothing of [Patrick's] conversation with counsel. [Patrick] volunteered that he had told his attorney about the evidence to bolster his own credibility." The court further found that the "statement, though brief, went to the very core of communication with his attorney, at least with respect to the matter of recent

fabrication.  The statement did not merely disclose that there had been a discussion but, instead, disclosed the substance of that discussion."

Patrick's claim that the trial court abused its discretion in determining that he waived his attorney-client privilege raises an issue of state law that is not cognizable on federal habeas review.  *See Swarthout*, 131 S. Ct. at 863; *Estelle*, 502 U.S. at 67-68.  Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation, *see Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc), the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.[2]  Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.  *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It is not even whether it was an abuse of discretion for her to have done so–the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (quoting § 2254(d)(1))).

Moreover, Patrick fails to allege facts supporting a finding that his due process rights were violated.  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of constitutional law.  *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir.

---

[2]        At one time, the Ninth Circuit viewed a state court ruling to be "objectively unreasonable" if it amounted to a clear error.  *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir. 2000).  This is the test the Ninth Circuit uses in reviewing a trial court decision under the abuse of discretion standard.  *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc).  The Supreme Court noted *Van Tran's* statement of the test and expressly rejected it as inappropriate under the AEDPA.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (clear error standard is insufficiently deferential to state courts).

1996).  And even if Patrick could prove that the trial court abused its discretion in allowing

testimony that invaded his attorney-client privilege, Patrick would still not be entitled to habeas

relief.  The attorney-client privilege is an evidentiary privilege, not a constitutional right.  *Lange*

*v. Young*, 869 F.2d 1008, 1012 n.2 (7th Cir. 1989).  The violation of a defendant's attorney-client

privilege thus does not require the suppression of derivative evidence.  *See United States v.*

*Marashi*, 913 F.2d 724, 731 n.11 (9th Cir. 1990) (stating that "no court has ever applied [the fruit

of the poisonous tree doctrine] to *any* evidentiary privilege").  Accordingly, Patrick is not

entitled to relief on this evidentiary claim either.

    C.    *Claim 7.  Chain of custody objection*

    Patrick likewise contends that the trial court should not have admitted the items found in

his blood-stained shorts because the prosecution could not establish a continuous chain of

custody of the items.  The appellate court rejected this claim on direct appeal:

> [Patrick] argues that the failure of the detectives to document and book separately
> the items in the pocket of the red and black shorts was a break in the chain of custody
> and, therefore, the trial court abused its discretion in admitting the evidence.  We
> disagree.
>     Without more, the failure to discover, document, and book separately the items
> from the pocket did not result in a break of the chain of custody.  Because the shorts were
> discovered and sealed into a bag by detectives and the criminalist found the items in the
> pocket when she examined the contents of the bag, the evidence was sufficient to
> establish an inference that the items were in the pocket when the shorts were discovered
> by the detectives.  "[T]aking all the circumstances into account including the ease or
> difficulty with which the particular evidence could have been altered, it is reasonably
> certain that there was no alteration."  That there was a bare possibility that those items
> were not in the·pocket when the shorts were discovered is not enough to prevent the trial
> court from exercising its discretion in admitting the items.  A reasonable certainty that
> there was not alteration is sufficient.

    The California Court of Appeal concluded that the evidence was admissible because

there was no chain of custody problem under California law.  Again, this Court is bound by the

state court's interpretation of California state law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76

(2005).  The appellate court's determination that enough custody had been shown to reject

Patrick's claim cannot be said to be contrary to, or an unreasonable application of, clearly

established federal law.  *See* 28 U.S.C. § 2254(d).  Moreover, even if Patrick could show a defect

in the chain of custody, "a defect in the chain of custody goes to the weight, not the

admissibility, of the evidence introduced."  *United States v. Matta-Ballesteros*, 71 F.3d 754, 769

(9th Cir. 1995) (citation omitted).  Accordingly, the admission of the evidence found in his

shorts did not violate Patrick's constitutional rights to a fair trial and due process, and Patrick is

therefore not entitled to relief on this claim.

3.      *Jury Instruction Error* (claim 5)

        Patrick additionally claims that, "[b]ecause [Patrick] had been subjected to extensive

cross-examination, the trial court erroneously infringed on [his] ability to present a defense and

his right to due process of law when it instructed the Jury that it could consider [Patrick's]

refusal to continue cross-examination when evaluating his credibility."  Patrick raised this claim

on direct appeal, essentially arguing that the extensive questioning he faced during cross-

examination, which he characterized as "argument to the jury disguised as questions," compelled

his refusal to testify because both the prosecution and Sterling's attorney "had multiple

opportunities to cross-exam[ine] [Patrick] on all aspects of his testimony."  While Patrick

acknowledged that California law permits a trial court to impose sanctions when a party refuses

to submit to cross-examination, including striking the party's testimony in whole or part or

giving the jury the instruction he challenged, he "assert[ed] that sanctions should be imposed

only when the refusal to submit to continued cross-examination impairs the truth-finding process

26

and the reliability of the defendant's testimony."  The state appellate court rejected this argument, noting that the trial court selected the less drastic sanction available and that it was "not a close case."

Patrick fails to identify any Supreme Court precedent that even suggests that a defendant's due process rights are violated by a jury instruction permitting a jury to consider the defendant's refusal to testify in assessing his credibility.  In the absence of such holding, this Court cannot find the state court's decision was an unreasonable application of clearly established federal law.  *See Greene v. Fisher*, 132 S. Ct. 38, 45 (2011).

Indeed, federal precedent strongly indicates that the state court's finding is both reasonable and not contrary to federal law.  "Once a defendant testifies, he exposes himself to full cross-examination concerning matters relevant to his testimony."  *United States v. King*, 200 F.3d 1207, 1216-17 (9th Cir. 1999) (citing *Brown v. United States*, 356 U.S. 148, 155-57 (1958); *United States v. Panza*, 612 F.2d 432, 437 (9th Cir. 1980)).  Similar to California state courts, district courts within the Ninth Circuit are authorized to impose the following sanctions upon a defendant who refuses to answer questions on cross-examination: "(1) permit the prosecution to comment on the defendant's unprivileged refusal to answer; (2) permit the prosecution to impeach the defendant's direct testimony by continuing to elicit his unprivileged refusal to answer; (3) instruct the jury that it may take the defendant's refusal to answer various questions into account when reaching a verdict; and/or (4) strike the defendant's direct testimony."  Patrick does not point to–nor can this Court find–any precedent suggesting that a defendant is immune from such sanctions upon a showing that the prosecution was able to fully cross-examine the

defendant prior to his refusing to continue.  Patrick is therefore not entitled to relief on his jury instruction claim.

4.    *Prosecutorial Misconduct* (claim 8)

Patrick further asserts that "[t]he prosecution committed misconduct and denied [Patrick] due process of law when she charged each defendant with personal use of a gun when in fact only one gun was involved.  Furthermore, the Prosecution argued to codefendant Sterling['s] Jury that the physical evidence shows that he/Sterling was the shooter."  The appellate court rejected this claim on direct appeal of Patrick's conviction, concluding:

> Defendant's contention is without merit because (1) the theories presented to the juries by the prosecutor were not inconsistent, (2) the prosecutor's approach was justified, and (3) there was no injustice here in the form of a false conviction.
>
> Although the prosecutor argued to the Sterling jury that Sterling was the shooter, she acknowledged that there was conflicting evidence and told the Sterling jury that it was up to them to decide who the shooter was.  The prosecutor's argument to [Patrick's] jury was not inconsistent because, as the prosecutor told the Sterling jury, the evidence potentially supported a decision either way on the identity of the shooter.  Even though both defendants were charged with personal use of a firearm, the prosecutor was not attempting to get a true finding on that allegation for both defendants.
>
> The approach taken by the prosecutor was justified by the facts.  The shots came from around the middle of the backseat.  Therefore, either [Patrick] or Sterling could have been the shooter.  The evidence was conflicting.  The prosecutor told each jury that it was up to them to decide who fired the shots, and that was appropriate given the evidence.

To prevail on a claim of prosecutorial misconduct, Patrick must show that the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial."  *Greer v. Miller*, 483 U.S. 756, 765 (1987) (citation and internal quotation marks omitted).  Even if a prosecutor's conduct amounts to constitutional error,

however, habeas relief will be granted only if Patrick can establish that the error had a substantial and injurious effect or influence in determining the jury's verdict.  *Shaw v. Terhune*, 380 F.3d 473, 378 (9th Cir. 2004) (citing *Brecht*, 507 U.S. at 637-38).

At the close of trial, Patrick moved for a new trial, claiming that the prosecution presented inconsistent factual versions of the events in the case to each jury during closing arguments.  The trial court denied the motion.  A review of the record shows that the prosecutor argued in her rebuttal arguments that both Patrick and Sterling were guilty of first degree murder because the murders were committed in the course of a robbery.  The prosecutor first told Sterling's jury that they had to decide who the shooter was and referred to evidence suggesting that Sterling was the shooter.  The prosecutor also told Patrick's jury that they had to decide who the shooter was and pointed to evidence suggesting that Patrick's version of the events was not credible.  The appellate court's conclusion that the prosecutor's theories at trial were not inconsistent is therefore supported by this Court's review of the record, and this Court can find it neither unreasonable nor contrary to federal law.  That the prosecution explicitly told each jury that it had to determine which defendant was the shooter and properly relied on facts adduced at each trial makes this case quite different than the case the Ninth Circuit faced in *Thompson v. Calderon*, in which the Ninth Circuit found that the prosecutor, during the second trial of a codefendant, manipulated evidence and witnesses and "essentially ridiculed the theory he had used to obtain a conviction and death sentence at [the first defendant's] trial."  120 F.3d 1045, 1057-58 (9th Cir. 1997) (en banc), *reversed on other grounds*, 523 U.S. 538 (1998).

Moreover, even if Patrick could demonstrate that the prosecution theories should somehow be construed as consistent, there is no clearly established Supreme Court precedent to

support his claim that due process prohibits a prosecutor from arguing inconsistent theories.

"This Court has never hinted, much less held, that the Due Process Clause prevents a State from

prosecuting defendants based on inconsistent theories."  *Bradshaw v. Stumpf*, 545 U.S. 175, 190

(2005) (Thomas, J., concurring).  Without such holding, this Court cannot find the state court's

decision was an unreasonable application of clearly established federal law.  *See Greene*, 132 S.

Ct. at 45.  While the Ninth Circuit has found that "a prosecutor's pursuit of fundamentally

inconsistent theories in separate trials against separate defendants charged with the same murder

can violate due process if the prosecutor knowingly uses false evidence or acts in bad faith," it

has also recognized that there is no *per se* constitutional bar against a prosecutor presenting

fundamentally inconsistent theories of guilt against conspirators who are tried separately,

particularly where the "arguments were consistent with the evidence adduced at each trial."

*Nguyen v. Lindsey*, 232 F.3d 1236, 1240 (9th Cir. 2000).

   Because the prosecution's theories before Patrick's and Sterling's juries were not

fundamentally inconsistent, and the evidence presented at Patrick's trial sufficiently supported

the jury's finding that Patrick was the shooter, Patrick's prosecutorial misconduct claim must

fail.

5.  *Sentencing Error* (claim 11)

   Patrick additionally claims that the trial court erred when it failed to stay sentencing on

his conviction.  On direct appeal of his conviction, Patrick raised this claim, alleging that his

"consecutive sentence for robbery in count 3 violated the proscriptions of Penal Code section

30

654."[3]  Relying on state case law and statutory law, the appellate court rejected his claim, concluding there was ample support for the trial court's implicit findings of separate objectives and intents for the robbery and murder and that the statutory section did not apply to special circumstances.

The thrust of Patrick's claim is that the trial court improperly imposed his sentence in violation of Penal Code § 654.  The essence of Patrick's argument is that the state appellate court's interpretation of California sentencing law in the sentence determination is incorrect, but this Court is bound by the state court's interpretation of California state law.  *See Bradshaw*, 546 U.S. at 76.  Again, a petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.  *See Langford*, 110 F.3d at 1389.  The state appellate court's determination that the trial court properly imposed Patrick's sentence is both reasonable and not contrary to federal law.  Patrick is therefore not entitled to habeas relief on this claim.

6.    *Cumulative Error* (claim 13)

Finally, Patrick contends that the cumulative effect of the alleged errors deprived him of a fair trial.  This claim was raised and rejected on direct appeal.

---

[3]         Section 654(a) provides:

> An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under one bars a prosecution for the same act or omission under any other.

CAL. PENAL CODE § 654(a).

"While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness." *Peyton v. Cullen*, 658 F.3d 890, 896-97 (9th Cir. 2011) (citing *Chambers v. Mississippi*, 401 U.S. 284, 298, 302-03 (1973)). Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623 (citation omitted). In other words, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting conviction violates due process. *See Chambers*, 401 U.S. at 294.

As discussed above, Patrick does not allege any claims that amount to error. Accordingly, he demonstrates no errors that can accumulate to a level of a constitutional violation, and the state courts therefore did not unreasonably deny him relief on this claim. *See Mancuso*, 292 F.3d at 957.

C.      Evidentiary Hearing

With respect to each of his claims, Patrick also requests that this Court grant him an evidentiary hearing. Patrick fails, however, to specify what evidence he wishes to present for each claim. A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for

constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense.  28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963), *overruled on other grounds by Kenney v. Tamayo-Reyes*, 504 U.S. 1 (1992). *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005).  In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.  *Id.* at 670 (quoting *Townsend*, 372 U.S. at 313).

As discussed above, Patrick has failed to assert a colorable claim for relief as to any of his claims.  Because he does not cite to new laws or underlying facts that were not developed on the record before the state courts, he also has failed to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2).  Accordingly, Patrick's request for an evidentiary hearing also must be denied.

## V. CONCLUSION AND ORDER

Patrick is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 8, 2013.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

34